# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**

* * * * * * * * * * * * * * * * * * * * * * * * *
BILLY GOGGINS, *
as personal representative of the estate of, *
LINDA GOGGINS, *
* No. 19-751V
Petitioner, * Special Master Christian J. Moran
*
v. *
* Filed: July 28, 2026
SECRETARY OF HEALTH *
AND HUMAN SERVICES, *
*
Respondent. *
* * * * * * * * * * * * * * * * * * * * * * * * *

Diana Stadelnikas, Mctlaw, Sarasota, FL, for petitioner;
Lauren Kells, United States Dep't of Justice, Washington, DC, for respondent.

**DECISION DENYING ENTITLEMENT TO COMPENSATION**[1]

Linda Goggins received a dose of a vaccine to protect against *pneumoniae streptoccus* infections, called Prevnar 13. She developed a neurologic condition, Guillain-Barré syndrome ("GBS"). She alleged that the Prevnar 13 vaccine caused her GBS. She supported her claim with reports from neurologist Dr. Lawrence Steinman.

The Secretary opposes the claim of compensation. The Secretary relied upon reports from neurologist Dr. Dara Jamieson, and Robert S. Fujinami, who holds a Ph.D. in immunology, but does not have a medical degree.

Whether Prevnar can cause GBS has divided special masters. In a different case before the undersigned, Dr. Steinman's theory was not persuasive. Romine v. Sec'y of Health & Human Servs., No. 19-468V, 2026 WL 937898 (Fed. Cl. Spec. Mstr. Mar. 13, 2026).

[1] Because this decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). This means the decision will be available to anyone with access to the internet. In accordance with Vaccine Rule 18(b), the parties have 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. Any changes will appear in the document posted on the website.

A review of the record in the present case shows that the evidence is very similar to the evidence in Romine. This similarity in evidence suggests that the outcome should be the same. Moreover, although given an opportunity, petitioner has not distinguished Romine. Thus, the claim for compensation is DENIED.

## I. Medical Events[2]

Ms. Goggins was born in 1946. Exhibit 26 ¶ 1. On September 1, 2016, she received the allegedly causal Prevnar vaccination. Exhibit 3 at 258.

On September 17, 2016, at an emergency room, Ms. Goggins reported that she started to feel tingling in both hands, her feet, and tongue the previous night. Exhibit 3 at 250-51. The doctor discharged her home.

The next day, Ms. Goggins returned to the emergency room with similar symptoms and with a difficulty walking. She was admitted to the hospital. While hospitalized, she was diagnosed with GBS. Both neurologists, Dr. Steinman and Dr. Jamieson, agree that Ms. Goggins suffered from GBS. Exhibit 34 at 36; Exhibit A at 8.

Fortunately, Ms. Goggins appears to have suffered a relatively mild form of GBS. See Exhibit A at 8. The specific details about the course of her GBS do not affect an assessment as to the *cause* of her GBS.

Ms. Goggins died on March 21, 2020. Exhibit 27. She died from causes unrelated to GBS. See Pet'r's Status Rep., filed Jan. 6, 2023.

## II. Procedural History[3]

Ms. Goggins started this case on May 21, 2019, by filing her petition through counsel Diana Stadelnikas. She supported it with medical records.

The Secretary reviewed this material and recommended against an award of compensation. Resp't's Rep't, filed July 6, 2020. The Secretary asserted that Ms. Goggins's treating doctors presented sequences of events, not statements of causation. The Secretary also noted that she had not supported her case with an independently retained expert.

Attorney Stadelnikas stated that Ms. Goggins died. Pet'r's Mot. for Enl. Of Time, filed Sep. 28, 2020. Her widower, Billy Goggins, was substituted as petitioner on her behalf. Order, issued Apr. 7, 2021.

---

[2] Because events in Ms. Goggins's medical history do not meaningfully contribute to the resolution of this case, they are set forth in an abbreviated fashion. More detailed recitations are found in Pet'r's Br., filed Nov. 4, 2024, at 3-9, and Resp't's Br., filed Feb. 12, 2025, at 2-13.

[3] The procedural history is straightforward and not controversial. For additional details, see Pet'r's Br. at 2-3; Resp't's Br. at 1-2.

The parties exchanged reports from their retained experts. Petitioner eventually filed three reports from Dr. Steinman. Exhibits 34, 68, and 74. The Secretary countered with one report from Dr. Jamieson (Exhibit A) and three reports from Dr. Fujinami (Exhibits C, E, and F).

After efforts to resolve the case informally were not fruitful, the parties advocated through briefs. Petitioner argued that Ms. Goggins's estate was entitled to compensation through a 70-page brief, filed Nov. 4, 2024. The Secretary contended that petitioner was not entitled to compensation through a 33-page brief, filed Feb. 12, 2025. Petitioner defended the claim. Pet'r's Reply, filed Mar. 14, 2025.

This case effectively paused as other Prevnar-GBS cases were being adjudicated. Importantly, as reflected in a May 1, 2026 order to show cause, the Federal Circuit affirmed a special master's denial of compensation in a Prevnar-GBS case. Gamboa-Avila v. Sec'y of Health & Hum. Servs., 166 F.4th 1318 (Fed. Cir. 2026). In addition, the undersigned found that Dr. Steinman's opinion on this topic was not persuasive in Romine. Petitioner was given an opportunity to distinguish Romine or to dismiss her case voluntarily. Order to Show Cause, issued May 1, 2026.

Petitioner did not seek to dismiss the case voluntarily. Instead, petitioner asked for a ruling on the record. It is unclear what result petitioner seeks as petitioner did not address Romine at all. Petitioner did not present any contentions, arguing that Romine was mistaken. Similarly, petitioner did not identify any evidentiary differences between this case and Romine. See Pet'r's Mot. for a Decision on the Record, filed May 29, 2026.

By way of contrast, the Secretary recommended that Romine and another recent Prevnar-GBS decision, Hunt v. Sec'y of Health & Human Servs., No. 21-1379, 2026 WL 1601989 (Fed. Cl. Spec. Mstr. May 8, 2026) be followed. Resp't's Resp., filed June 12, 2026.

Petitioner in reply, noted that he requested a ruling on the record. Pet'r's Reply, filed June 23, 2026. The reply did not address either Romine or Hunt. With this reply brief, the case is ready for adjudication.

## III. Standards for Adjudication

A petitioner is required to establish his case by a preponderance of the evidence. 42 U.S.C. § 300aa–13(1)(a). The preponderance of the evidence standard requires a "trier of fact to believe that the existence of a fact is more probable than its nonexistence before [he] may find in favor of the party who has the burden to persuade the judge of the fact's existence." Moberly v. Sec'y of Health & Hum. Servs., 592 F.3d 1315, 1322 n.2 (Fed. Cir. 2010) (citations omitted). Proof of medical certainty is not required. Bunting v. Sec'y of Health & Hum. Servs., 931 F.2d 867, 873 (Fed. Cir. 1991).

Distinguishing between "preponderant evidence" and "medical certainty" is important because a special master should not impose an evidentiary burden that is too high. Andreu v. Sec'y of Health & Hum. Servs., 569 F.3d 1367, 1379-80 (Fed. Cir. 2009) (reversing special master's decision that petitioners were not entitled to compensation); see also Lampe v. Sec'y of Health & Hum. Servs., 219 F.3d 1357 (Fed. Cir. 2000); Hodges v. Sec'y of Health & Hum. Servs., 9 F.3d 958, 961 (Fed. Cir. 1993) (disagreeing with dissenting judge's contention that the special master confused preponderance of the evidence with medical certainty).

To receive compensation, petitioners must establish five elements. 42 U.S.C. § 300aa–11(c)(1)(A) through (E); 42 U.S.C. § 300aa–13(a)(1)(A) (authorizing special masters to award compensation when petitioners establish items listed in section 11(c)(1)). The third element, which is found in paragraph (C), concerns causation. Petitioners may fulfill this aspect by establishing that a vaccine was the cause-in-fact of an injury.[4]

To show causation-in-fact, petitioners bear a burden "to show by preponderant evidence that the vaccination brought about [the vaccinee's] injury by providing: (1) a medical theory causally connecting the vaccination and the injury; (2) a logical sequence of cause and effect showing that the vaccination was the reason for the injury; and (3) a showing of a proximate temporal relationship between vaccination and injury." Althen v. Sec'y of Health & Hum. Servs., 418 F.3d 1274, 1278 (Fed. Cir. 2005).

## IV. Analysis

At the onset, it is important to start with an acknowledgement that many opinions have been written about whether Prevnar can cause GBS. For example, Romine found that Mr. Romine via Dr. Steinman's opinion and in-person testimony did not meet his burden of proof. Romine also explained where the analysis in that case differed from the analysis of rulings finding in favor of compensation. In other words, Romine found that the opinions that denied compensation tracked more closely to appellate precedents guiding the review of evidence on topics such as epidemiology and molecular mimicry.

In resolving cases, special masters may draw upon their "accumulated expertise." Whitecotton v. Sec'y of Health & Hum. Servs., 81 F.3d 1099, 1104 (Fed. Cir. 1996) (quoting Hodges v. Sec'y of Health & Hum. Servs., 9 F.3d 958, 961 (Fed. Cir. 1993)). Although the Federal Circuit has not delineated the bounds of "accumulated expertise," such expertise seems to encompass consideration of other opinions, even if those opinions do not constitute binding precedent. Several opinions from the Court of Federal Claims have recognized that special masters may consider previous non-binding opinions. See, e.g., Eberline v. Sec'y of Health & Hum. Servs., No. 23-655, 2026 WL 1746434, at *17 (Fed. Cl. 2026); Hiatt v. Sec'y of Health & Human Servs., 180 Fed. Cl. 449, 456 (2026) ("reliance on prior understanding reflects the ordinary and legitimate effort to apply consistent reasoning to similar evidence"), appeal docketed, No. 26-1621 (Fed. Cir. Apr. 7, 2026); Barrios v. Sec'y of Health & Human Servs., No. 23-230V, 2025 WL 777259, at *5 (Fed. Cl. Feb. 18, 2025) ("Special Masters are not required to ignore precedent and relitigate causation theories that have already been litigated repeatedly"); see also Martin v. Sec'y of Health & Human Servs., No. 15-789V, 2020 WL 4197748, at *27-28

[4] Although the petition was captioned as an "On-Table Petition for Compensation," petitioner ultimately litigated this matter exclusively as a causation-in-fact case under Althen. In Ms. Goggin's May 29, 2026 response to the Court's Order to Show Cause, she described the case as alleging that the vaccination "caused her to develop" GBS and identified the expert reports and entitlement briefing addressing causation. Pet'r's Status Rep., filed May 29, 2026 ¶¶ 1, 5-14. Ms. Goggins thereafter moved for a decision on the existing record without asserting entitlement through the Vaccine Injury Table or arguing that any Table presumption applied. Pet'r's Mot. for Decision on the Record, filed May 29, 2026; Pet'r's Reply, filed June 23, 2026. Accordingly, this decision addresses only whether petitioner established causation-in-fact.

(Fed. Cl. Spec. Mstr. May 8, 2020) (explaining why special masters should consider other opinions), mot. for rev. denied, 158 Fed. Cl. 459, 483 (2020).

With this background, it is easy to see many of the deficiencies in Romine remain here.

### A. Epidemiology Does Not Distinguish This Case from Romine

Romine noted that epidemiologic studies have not detected an increased incidence in GBS after vaccines against streptococcus pneumoniae. Here, Dr. Jamieson cited the same set of studies plus more. See Exhibit A at 9-11. Dr. Steinman did not persuasively counter Dr. Jamieson's opinion. See Exhibit 68 at 1 (discussing only Haber). Thus, the epidemiology continues to weigh against a finding that Prevnar can cause GBS.[5]

Another way of exploring this topic is whether people who are infected with the *Streptococcus pneumoniae* develop GBS more frequently. Romine, 2026 WL 937898, at *8-9. To be fair, the Secretary's experts did not raise this point. See Exhibits A and C. On the other hand, the Federal Circuit has ruled that a special master was not arbitrary in pointing out that the infection with the wild bacteria is not associated with GBS. Gamboa-Avila v. Sec'y of Health & Hum. Servs., 166 F.4th 1318, 1322 (Fed. Cir. 2026). Therefore, with respect to the proposition that Prevnar can cause GBS, this point is either neutral because it is not applicable or weighs against causation because of the Federal Circuit's statement. Either way, this information does not support the proposition on which petitioner bears the burden of proof.

### B. Molecular Mimicry Does Not Distinguish This Case from Romine

An evaluation of Dr. Steinman's use of molecular mimicry can be divided into three components. The first aspect is a review of the appellate cases evaluating special masters' assessment of molecular mimicry. The second component is Dr. Steinman's protein theory. The third component is Dr. Steinman's phosphoglycerol theory.

As noted in Romine, 2026 WL 937898, at *10, appellate authorities have generally ruled that special masters "may properly require some empirical evidence to show that a particular vaccine can cause a particular disease." Both parties' briefs would have been better if they had discussed the appellate cases regarding molecular mimicry.

As he did in Romine, Dr. Steinman proposed two variants of the molecular mimicry theory. The first theory involves a BLAST search for proteins that share homology. The second theory involves phospholipids.

*BLAST Theory / Proteins*. Dr. Steinman uses essentially the same BLAST-based methodology that he used in *Romine* to identify homologous proteins that purportedly support molecular mimicry. See Romine, 2026 WL 937898, at *11-18; see also Exhibit 34 at 23-34; Pet'r's Br. at 58-59. The slight difference between Dr. Steinman's opinion in Romine is that Dr. Steinman asserted that the target tissue that best supports molecular mimicry is PMP22. Romine,

---

[5] Although petitioner argues that epidemiology deserves limited weight (see Pet'r's Br. at 66-69), this argument overlooks cases such as Tullio v. Sec'y of Health & Hum. Servs., 149 Fed. Cl. 448, 475 (2020), that endorsed a special master's consideration of epidemiologic evidence.

2026 WL 937898, at *15. But, in this case, Dr. Steinman's opinion instead uses Contactin-1. See Pet'r's Br. at 58.

Any differences between PMP22 and Contactin-1 do not affect the outcome here. Romine rejected Dr. Steinman's protein-based theory for many reasons, which did not involve PMP22. For example, the BLAST program calculates whether any homology might be the result of chance alone, a figure known as an "E-value." An E-value with a lower number is more meaningful than an E-value with a higher number. Based upon evidence presented in Romine, the undersigned found that "Dr. Steinman's use of a BLAST search with an E-value of 10 to identify immunologically relevant homolog is methodologically unsound. The process seems likely to fail to weed out many false positive that a more stringent E-value setting would detect." Romine, 2026 WL 937898, at *13. Here, the E-value for the comparison with contactin-1 is 2.7. Exhibit 74 at 5. This E-value suggests that the homology is the result of chance.

In addition to finding that Dr. Steinman's opinion regarding the BLAST searches unpersuasive, Romine went a step further. Romine also found that Dr. Steinman's methodology was unsound and failed to meet any of the metrics for evaluating opinion testimony set out in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592-95, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Romine, 2026 WL 937898, at *24-27. Although given an opportunity to strengthen Dr. Steinman's opinion, petitioner did not present any argument that Romine's assessment of Dr. Steinman's BLAST theory was incorrect. See Pet'r's Mot. for Ruling on the Record. Thus, there is no reason to depart from the prior assessment of the lack of persuasiveness and the lack of reliability that permeates Dr. Steinman's BLAST theory.

*Phospholipids Theory*. Dr. Steinman could conduct a BLAST search on Contactin-1 because Contactin-1 is a protein. But, Dr. Steinman also proposed molecular mimicry based upon phospholipids, which are not proteins. See Exhibit 34 at 9-22. This theory was also advanced in Romine, 2026 WL 937898, at *18-23. The theory was rejected in part because Dr. Steinman's reliance upon articles by Nakos and Ho was not persuasive. So, too, in this case, Dr. Steinman also relies upon these articles. See Pet'r's Br. at 39-43. The undersigned still finds these articles unpersuasive, and again, petitioner has not done anything to strengthen Dr. Steinman's opinion.

*Overall*. In all causation-in-fact cases, one part of petitioner's burden is to show "a medical theory causally connecting the vaccination and the injury." Althen, 418 F.3d at 1278. Dr. Steinman has presented similar, although not absolutely identical, theories to explain how Prevnar can cause GBS in Romine and in the present case. His opinions were found unpersuasive and unreliable in Romine. Thus, Mr. Romine was found not entitled to compensation based upon a failure to meet his burden of proof for Althen prong one. To be sure, the undersigned's decision in Romine is not binding precedent that controls the outcome as a legal matter.

In the case at bar, the evidence is substantially the same as the evidence in Romine. Thus, because the evidence is similar, a similar outcome seems appropriate. The evidence is likely to be similar because an expert with extensive experience in the Vaccine Program (Dr. Steinman) presumably presented his best case when he wrote his reports in Romine and in this case. Petitioner did not argue that the evidence differed in her case. See Pet'r's Mot. for Ruling on the Record.

If petitioner had presented *arguments* that distinguished Romine, then the undersigned would have considered those arguments. Likewise, if petitioner had presented *evidence* that was not present in Romine, then the undersigned would have considered that different evidence. Under these circumstances, the evidentiary record and arguments are substantially the same Romine. Accordingly, Ms. Goggins has also not established Althen prong one because the evidence offered to support a causal medical theory is not persuasive. Compensation therefore must be denied.

## V. Conclusion

It is unfortunate that Ms. Goggins suffered from GBS, even if the GBS was mild. It is also unfortunate that Ms. Goggins passed away during the course of the litigation. For these events, Mr. Goggins is entitled to sympathy.

However, Congress dictated that special masters resolve claims for compensation based upon the evidence. Here, the evidence is insufficient to establish, by a preponderance of the evidence, that the Prevnar vaccine can cause GBS. Thus, petitioner is not entitled to compensation.

The Clerk's Office is instructed to enter judgment in accord with this decision unless a motion for review is filed. Information about filing a motion for review, including the deadline, can be found in the Vaccine Rules, which are available on the website for the Court of Federal Claims.

IT IS SO ORDERED.

s/Christian J. Moran
Christian J. Moran
Special Master